**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MOHAMMED ELSEIDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 23-cv-03281 |
| | ) | |
| MOHAMED ELKASSTAWI, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS**

Defendant, Mohamed Elkasstawi, through his undersigned counsel, hereby moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

## I.    INTRODUCTION

This action stems from a dismissed third-party complaint in the Circuit Court of Cook County where an appeal is currently pending. There, ElSeidy was disallowed from bringing a third-party claim against Elkasstawi where ElSeidy did not suggest that Elkasstawi might be liable for all or part of the claim against him in that lawsuit.

The Cook County case centered around a group of five colleagues collaborating on a cryptocurrency venture that they called "zk Capital" and that would later be incorporated as zk Capital, Inc. In an effort to establish their brand and recruit investors, the colleagues pooled their personal funds to make investments into cryptocurrencies. As with many cryptocurrencies, the value of their investments has plummeted and, in this lawsuit, ElSeidy, seeks to redefine his investment as a loan to avoid the crippling losses he suffered.

Well before the cryptocurrency market crash, through their marketing efforts, the colleagues were introduced to a similarly situated group of individuals that shared their desire and

passion. The two groups discussed collaborating. But, instead of the two groups collaborating, four of the five partners in zk Capital clandestinely planned their departure from zk Capital to join the other group to the exclusion of Elkasstawi who was left behind. The relationship between the parties and their various business dealings is the subject of significant litigation pending in the Circuit Court of Cook County.

Legally, the group was considered promoters of the zk Capital venture and each individual owed certain fiduciary duties to the yet-formed company. However, when they left, the departing partners took certain corporate opportunities that rightfully belonged to the venture as a whole. The Cook County case is concluding – though still pending – and the plaintiff has filed a notice of appeal.

The present action is merely a refiling of ElSeidy's third-party complaint in the Cook County action. The allegations and causes of action are identical; if not, they contain negligible differences.

As with the state court complaint, the federal court complaint contains fundamental errors that warrant dismissal.

## II.     LEGAL STANDARD

Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. ShoreBank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In order to survive a Rule 12(b)(1) motion, the plaintiff must establish that the district court has subject-matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2011), overruled on other grounds, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is]

analyzed [like] any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *Id.*

## III.   ARGUMENT

### A.   THE COURT SHOULD DISMISS THIS CASE UNDER THE COLORADO RIVER ABSTENTION DOCTRINE.

The Court should abstain from exercising jurisdiction under 12(b)(1) and *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)

Under the *Colorado River* doctrine, a federal court "may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. Friedman*, 215 F. Supp. 3d 642, 648 (N.D. Ill. 2016) (quoting *Colorado River*, 424 U.S. at 818). Application of the doctrine requires a two-part inquiry. First, a court must determine "whether the state and federal court actions are parallel." *Freed*, 215 F. Supp. 3d at 648. If the suits are parallel, "the court then must weigh ten non-exclusive factors to determine whether abstention is proper." *Id*. In this case, there is no question the two suits are parallel, and nine of the ten factors weigh in favor of abstention.

### 1.   The Federal and State Lawsuits Are Parallel.

Parallelism exists when "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *Freed*, 215 F. Supp. 3d at 648 (citing *AAR Int'l[p*, 250 F.3d at 518). The lawsuits derive from and will be decided by exactly the same set of facts and legal issues involving the same parties. Indeed, adjudication of the claims in the Cook County lawsuit would undoubtedly dispose of all the claims presented in this lawsuit.

Similarly, the *Freed* court also looked to "principles of *res judicata*" in determining that an adverse determination in state court "almost certainly would provide [the defendant] an immediate victory in [the federal] case." *Id*. at 650. The court further noted the possibility that

while a state court ruling involving one party might not apply to a different party in the federal lawsuit, "parallelism under *Colorado River* requires only that there be 'a substantial likelihood,' not a certainty," that all claims will be disposed. *Id*.

Further, in *Liebert Corp. v. Mazur,* 2004 WL 2095666, the district court dismissed Plaintiff's action under the CFAA "without prejudice with leave to move to reinstate the case within 30 days after the state case becomes final…" *Id.* at \*4. The court found:

> litigation of the [state and federal] claims will involve identical or almost identical discovery and very similar factual proof at trial. Also, even if plaintiffs do not amend the state lawsuit to add CFAA claims, resolution of the state law case would likely dispose of the CFAA claims as well because of Illinois law as to *res judicata* and claim splitting. Nothing in the CFAA's jurisdictional provision indicates that civil claims under the statute may only be brought in federal court. Plaintiffs could have, and likely still may, include the CFAA claims in the state action. Since the CFAA claims arise from the same occurrence as the ITSA claims, the CFAA claims would likely be found to be part of the same cause of action that has already been raised in the state lawsuit. Illinois *res judicata* rules apply to claims that are part of the same cause of action if those claims could have been raised in the prior lawsuit. *Id.* at \*2.

(internal citations omitted).

Further, suits "need not be identical to be parallel." *Freed*, 215 F. Supp. 3d at 648 (citing *Adkins v. VIM Recycling, Inc*., 644 F.3d 483, 498–99 (7th Cir. 2011) ("[F]or Colorado River purposes ... [p]recisely formal symmetry is unnecessary."); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). Notably, the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. *AAR Int'l, Inc. v. Nimelias Enterprises S.A*., 250 F.3d 510, 518 (7th Cir. 2001). As the Seventh Circuit has stated: "[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark v. Lacy,* 376 F.3d 682, 686–87 (7th Cir.2004).

Here, ElSeidy has merely repackaged a dispute from the pending Cook County case as a federal court complaint.

2.    *Nine of the Ten Colorado River Factors Weigh in Favor of Abstention.*

Evaluation of the factors "does not rest upon a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Rodriguez v. Ramsey*, No. 03 CV 3930, 2004 WL 2793150, at *2 (N.D. Ill. Jan. 28, 2004) (finding abstention proper where "several of these factors weigh against abstention."). In this case, each and every one of the applicable factors weighs in favor of abstention:

1)    **whether the state has assumed jurisdiction over property;**

There is no property at issue in the present matter, so this factor does not apply.

2)    **the inconvenience of the federal forum**;

Cook County is undoubtedly the more convenient forum as the two parties have been litigating a parallel case there since 2019 without any forum-related issues. The case is currently still pending with a notice of appeal filed.

3)    **the desirability of avoiding piecemeal litigation**;

Litigating both actions would result in piecemeal litigation as both lawsuits turn on the same facts, "rais[ing] the prospect of inconsistent rulings." *Freed*, 215 F. Supp. 3d at 656.

4)    **the order in which jurisdiction was obtained by the concurrent forums**;

The Cook County lawsuit was filed in 2019 and ElSeidy filed his counterclaim there years earlier, in February 2020.

5)    **the source of governing law, state or federal**;

All of the claims are governed by Illinois state law, not federal law. There are no federal statutes or laws that apply to this relatively simple breach of contract case.

**6)      the adequacy of state-court action to protect the federal plaintiff's rights**;

Because all of the claims are state law claims, Cook County could grant Plaintiff all the same relief as this Court.

**7)      the relative progress of state and federal proceedings**;

The Cook County action has been actively litigated for years, beginning in 2019, while this action just began. The parties completed extensive discovery, including depositions of the relevant parties and claims in this case.

**8)      the presence or absence of concurrent jurisdiction;**

All of the claims could be brought in Cook County Circuit Court.

**9)      the availability of removal;**

The claims in the Cook County lawsuit are non-removable as pled and no federal question otherwise exists, thus favoring abstention. *Freed,* 215 F. Supp. 3d at 657 (factor recognizes a policy against a federal court's hearing claims that are closely related to non-removable state proceedings).

**10)     the vexatious or contrived nature of the federal claim.**

Federal courts have found this factor favors abstention where, as here, ElSeidy could have brought every claim in the original state court proceeding. *Freed,* 215 F. Supp. 3d at 657; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("we see no reason why all claims and all parties could not have been, and still could not be, part of one suit).

As the *Freed* court noted when it found the same factors weighing in favor of abstention: "that state of affairs more than suffices to support a finding that Colorado River abstention pending resolution of the state suits is warranted." *Freed*, 215 F. Supp. 3d at 658. As in *Freed*, the federal lawsuit serves as an overt attempt at maintaining redundant lawsuits in hopes of wasting resources

and potentially picking between the more favorable forum. Accordingly, Defendant requests that the Court dismiss Plaintiff's Complaint.

3. *The Case must be stayed until the appeal is resolved.*

*LB Steel, LLC v. Walsh Constr., Co*. (In re LB Steel, LLC), 572 B.R. 690, 708-709 (N. D. Ill. 2017) is analogous and persuasive here where the Court explained that the abstention doctrine applies the same to a pending appeal as it does to trial court litigation, the Court explained:

> Here, consideration of the factors above compellingly weighs in favor of abstention. The most important of these is the related appeal of the Judgment Order in the state court. The relief that the Debtor seeks in the Second Adversary complaint is intricately connected to the Judgment Order. That Order was the culmination of nearly a decade of state court proceedings, which began in February 2005 when the Debtor filed suit against Walsh and others and currently continues as the state court considers the appeal. In contrast, the bankruptcy court has had jurisdiction only since October 2015, when the Debtor filed its petition for relief under chapter 11. And although the ultimate determination of avoidance is exclusively a federal bankruptcy concept, the issues underlying the Judgment Order are based on and arise from breach of contract under state law. Given the related nature of the Debtor's Second Adversary complaint to the issues raised in the pending state court appeal, the order in which the concurrent forums obtained jurisdiction, and the extensive litigation that has already taken place in the state court, abstention is proper in the matter at bar. Additionally, awaiting the appellate court's decision will conserve judicial resources, avoid the possibility of inconsistent rulings, and, ultimately, provide for the efficient judicial administration of the estate. Specifically, if the Judgment Order is reversed, the Debtor's Second Adversary complaint will become moot. By deferring to the state court, this Court will not have to needlessly extend judicial resources, and neither party will be required to incur the expense of litigation in this Court. Further, waiting for the state court to rule on the appeal will obviate the need to potentially vacate this Court's orders or move the Deposited Funds from one party to another.

*In re LB Steel, LLC*, 572 B.R. 690, 708-709.

The *Rooker Feldman* Doctrine would preclude this Court from exercising jurisdiction after the appeal is completed, but that rule is not applicable yet where the appeal is pending. *See Parker v. Lyons,* 757 F.3d 701, 705-06 (7th Cir. 2014) (holding that Rooker-Feldman does not apply if state court appeal of challenged judgment is pending when federal suit is filed). In *Exxon Mobil*

*Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), the Court explained that the doctrine should apply only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284.

That's exactly what is happening here. The Circuit Court of Cook County dismissed ElSeidy's claims and ElSeidy is merely challenging state court orders.

**B.     THE COMPLAINT VIOLATES THE REQUIREMENT IN RULE 8 THAT THE PLEADER MAKE A SHORT AND PLAIN STATEMENT.**

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) provides that claims should be set out "in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

"The primary purpose of [Fed. R. Civ. P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Id*. at 798. If neither the adverse party nor the court can make out the essence of the claims, "dismissal of a complaint on the ground that it is unintelligible is unexceptionable." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

That being said, "[a] district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter." *Id*. (internal quotation marks omitted). Rather, courts have found complaints wanting when they present a "vague, confusing, and conclusory articulation

of the factual and legal basis for the claim and [take] a general 'kitchen sink' approach to pleading the case." *Stanard*, 658 F.3d at 798. Such complaints frustrate Rule 8's objective of "fram[ing] the issues and provid[ing] the basis for informed pretrial proceedings." *Id*. at 797 (internal brackets omitted). "[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud," *Garst*, 328 F.3d at 378; dismissal is the appropriate remedy for district courts presented with "a bucket of mud."

Similar to the court's analysis in *Garst*, neither this Court nor Defendants should be required to fish a gold coin out of the mess that Plaintiff has created. The twelve pages of factual allegations contain entirely irrelevant allegations that are merely intended to muddy the water and prejudice the Court towards Elkasstawi. For example, ElSeidy misrepresents the rulings in the state court matter, stating "[t]he lawsuit was adjudicated in favor of ElSeidy when the court determined that Defendant failed to provide any evidence the trade secrets he alleged as a basis for the lawsuit ever even existed." (Complaint, ¶ 90.) The statement is incomplete as to the actual ruling and is, obviously, intended to skew the ruling to present Elkasstawi in a poor light. ElSeidy further suggests that "[t]he Defendant's sole purpose for filing the Cook County case was to harass the Plaintiff and attempt to avoid the debts and obligations owed to the Plaintiff." (Complaint, ¶ 91.) This statement is, similarly, intended solely to present Elkasstawi in a poor light when there is no basis for it. This section is merely an example of the muddy mess Plaintiff has created over a 22-page, six-count complaint.

Plaintiff should be required to replead and refine its Complaint rather than being allowed to maintain the current muddy mess with which it has presented the Court.

**C.     THE COMPLAINT FAILS TO STATE ANY PLAUSIBLE CLAIM AND SHOULD BE DISMISSED UNDER RULE 12(b)(6).**

**1.     The Complaint Fails to State Claims for Breach of Contract.**

The elements of a breach of contract claim are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 1st Dist. 2004); *nClosures Inc. v. Block and Co., Inc.,* 770 F.3d 598, 601 (7th Cir. 2014) (quoting *TAS Distrib. Co. v. Cummins Engine Co.,* 491 F.3d 625, 631 (7th Cir. 2007)). The Complaint fails to allege the basic elements of a breach of contract.

Counts I and V of the Complaint sound in breach of contract. But the claims strain credulity. ElSeidy is attempting to reframe investments he made as loans. But even then, ElSeidy appears to admit in his Complaint that, at the time, the exchange of money at issue was treated as "Elseidy investments." (Complaint, ¶¶ 142-43.)

Further supporting the actuality that the exchange of money was an investment, not a loan, is the concept of consideration. The critical question in that regard is what did ElSeidy receive from Elkasstawi in exchange for the money? The answer is nothing. Most loans involve interest. ElSeidy does not suggest he was to receive interest or anything else of value from the transaction. (Complaint, ¶ 47.) ElSeidy merely transferred the money to Elkasstawi. (Complaint, ¶ 50.) Who transfers $209,800 to a colleague based upon a purported promise to repay without any upside? ElSeidy tries to explain this inconsistency away by suggesting he "was a risk-averse investor" that never would have made such an immense investment. (Complaint, ¶ 46.) And, indeed, the risk was immense. Regardless of who was to make the ultimate investment – whether it be by ElSeidy himself or by Elkasstawi – ElSeidy transferred a significant amount of money for the ultimate

purpose of it being invested in Rightmesh. The immense investment provided ElSeidy no upside and only risk.

When viewed critically, ElSeidy's claims simply do not make sense. It becomes readily apparent that ElSeidy's transfer of money was an investment, not a loan. ElSeidy should not be allowed to pursue a claim for breach of contract when it is obvious no contract ever existed.

### 2. The Fraud Claim Fails as a Matter of Law

Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake," meaning "the who, what, when, where, and how: the first paragraph of any newspaper story." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (quotation marks omitted). To meet the Rule 9(b) standard, Plaintiffs must plead each of their claims "at the individual transaction level" and include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 742 (7th Cir. 2007).

"It seems more and more," said a Delaware court, "that breach of contract claims will not suffice to ameliorate the sense of betrayal parties feel when they come out on the losing end of a contractual business relationship." *Cornell Glasgow, LLC v. LA Grange Props., LLC*, No. N11C-05-016 JRS CCLD, 2012 Del. Super. LEXIS 266, at *2-3 (Super. Ct. June 6, 2012). Balefully aggrieved, these parties "feel compelled to punctuate their breach claims with claims that the breaching party committed fraud." *Id*. Such punctuation, however, is allowed only when the "facts and circumstances reveal that something more than failed performance" underpins the alleged fraud. *Id*. at *3. Otherwise, the cry of fraud is simply an unwarranted "escalation" of what should

be a "straightforward breach of contract dispute," akin to the bringing of "big sticks to a fist fight." *Id*.; *Cross v. Batterson*, 2017 U.S. Dist. LEXIS 99906, *9-15, 2017 WL 2798398 (N.D. Ill. 2017).

To state a claim for common-law fraud in Illinois, a complaint must allege that the defendant "(i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (*citing Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982)); accord, *Connick v. Suzuki Motor Co., Ltd*., 174 Ill. 2d 482 (1996).

The plaintiff's "reasonable reliance" on a misrepresentation is an element of fraud, and in deciding a motion, "a court can determine reasonable reliance as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Tirapelli v. Advanced Equities, Inc*., 351 Ill. App. 3d 450, 456 (1st Dist. 2004).

The allegation of a false representation of material fact itself "must be one of an existing or past fact, and not a mere promise to do some act in the future." *Polivka v. Worth Dairy, Inc*., 26 Ill. App. 3d 961, 965-66 (1st Dist. 1974). A mere "broken promise" is not a "material misrepresentation of preexisting or present fact." *Ault v. C.C. Servs., Inc*., 232 Ill. App. 3d 269, 271 (3rd Dist. 1992); *see also Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 723 (4th Dist. 2008) ("Statements concerning future intent or conduct are not actionable as fraud"); *Power v. Smith*, 337 Ill. App. 3d 827, 832 (4th Dist. 2003) ("[M]isrepresentations as to something to be done in the future generally do not constitute fraud").

Counts III and IV should be dismissed because ElSeidy's pleading fails as a matter of law to satisfy the pleading requirements for reasonable reliance and the false representation of a

material fact. For one, ElSeidy pleads in Count I that his relationship with Elkasstawi was contractual and that ElSeidy agreed to loan Elkasstawi the funds. As Illinois courts have repeatedly ruled, a mere broken promise is not a material misrepresentation to support fraud.

In addition, the mere suggestion – or even promise – that Elkasstawi would use the funds "to purchase a larger stake into another cryptocurrency, Rightmesh," is merely a promise to do something in the future and is not fraud. (Complaint, ¶¶ 126). Besides, if the purported transaction was a loan that was meant to be repaid, then the allegation that Elkasstawi did not make the investment would be immaterial to ElSeidy as he was not in a position to profit from it. The only way the existence of the investment would matter to ElSeidy would be if his funds were intended to be used as an investment, which is contrary to his allegations.

Where ElSeidy's Counts III and IV alleging fraud is an alternative theory to his breach of contract claim alleging the very same broken promise, it should not be allowed to stand.

### 3. The Complaint Fails to State Claims for Breach of Fiduciary Duty Because Defendant Owed No Such Duty.

A claim for breach of fiduciary duty must allege: (1) a fiduciary relationship, and (2) a breach of the duties imposed as a matter of law as a result of that relationship. *Miller v. Harris*, 2013 IL App (2d) 120512, ¶ 21 (2nd Dist. 2013). A fiduciary relationship may arise as a matter of law from the existence of a particular type of relationship (e.g. employment, membership in, or management of a limited liability company), or it may arise from special circumstances where one party places trust and confidence in another and the latter thereby gains superiority and influence over the former. *See Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 209-210 (1st Dist. 2000). When a fiduciary relationship does not arise as a matter of law, the party asserting the fiduciary relationship based on "special circumstances" must prove its existence by clear and

convincing evidence. *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595 (1st Dist. 1994).

The mere fact that the parties have engaged in business transactions or have a contractual relationship is not itself sufficient to establish a fiduciary relationship. *Benson v. Stafford*, 407 Ill. App. 3d 902, 913 (1st Dist. 2010). To determine whether a fiduciary relationship exists, courts look at factors including the degree of kinship between the parties, the disparity in age, health, education, or business experience between the parties, and the extent to which the servient party entrusted the handling of its business to the dominant party and placed its trust and confidence in it. *Id*.

Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist. *Id*. The essence of a fiduciary relationship is dominance of one party by the other. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 21 (2nd Dist. 1995). Indeed, in the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties. *Id*.

ElSeidy alleges that "Defendant owed ElSediy [*sic*] fiduciary duties as a result of their relationship with one another, Defendant's responsibilities in handling ElSeidy's investments, and Defendant's representation that the two were partners in zk Capital." (Complaint, ¶ 107.) There is no suggestion that the fiduciary relationship arises as a matter of law, therefore, ElSeidy must rely on the "special circumstances" exception. However, ElSeidy does not make any allegations to bring himself with this exception. There is no allegation of kinship between the parties. There is no suggestion that there is a disparity in age, health, education, or business experience. And there is no suggestion that ElSeidy entrusted the handling of his business to Elkasstawi, the purportedly

dominant party, and placed his trust and confidence in him. Instead, it would appear that the two have merely engaged in business transactions or have a contractual relationship. And this is not itself sufficient to establish a fiduciary relationship.

The claim must, therefore, be dismissed.

## CONCLUSION

WHEREFORE, Defendant prays for an order dismissing Plaintiff's Complaint and awarding such other and further relief as the Court deems just.

Dated September 27, 2023          Respectfully submitted,

**MOHAMED ELKASSTAWI,**
Defendant

By:     /s/ *David A. Eisenberg*
            One of His Attorneys

Alexander Loftus, Esq.
David A. Eisenberg, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com
david@loftusandeisenberg.com

## CERTIFICATE OF SERVICE

I, David A. Eisenberg, an attorney, hereby certify that on September 27, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing and via U.S. mail to:

/s/ *David A. Eisenberg*