**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOHAMMED ELSEIDY ) | |
|     Plaintiff, ) | No. 1:23-CV-03281 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| MOHAMED ELKASSTAWI ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

    In early 2018, Mohammed ElSeidy became a partner in a cryptocurrency investment fund called zk Capital, which was founded by Mohamed ElKasstawi. R. 1, Compl. ¶¶ 12, 18–19.[1] In ElSeidy's version of the story, a few months after ElSeidy joined, ElKasstawi asked him for a $209,800 loan. *Id.* ¶¶ 43, 45. ElKasstawi told ElSeidy that he would use the money to invest in a cryptocurrency startup and assured ElSeidy that he would repay him in full within two months. *Id.* ¶¶ 43, 48. ElSeidy agreed and transferred ElKasstawi the money. *Id.* ¶ 50. Two months came and went, but ElKasstawi did not repay the loan. *See id.* ¶ 52. And when ElSeidy began asking about repayment, ElKasstawi allegedly made excuses for the delay and repeatedly promised to pay him back soon. *Id.* ¶¶ 55–56. But ElKasstawi never repaid ElSeidy and instead shuttered zk Capital. *Id.* ¶¶ 88–89.

    So ElSeidy brought this suit against ElKasstawi, alleging breach of contract, breach of fiduciary duty, promissory fraud, fraudulent misrepresentation, and unjust

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

enrichment. *Id.* at 14–22.[2] ElKasstawi now moves to dismiss the Complaint, arguing that the Complaint is unintelligible and vague and that it fails to state any plausible claims for relief. R. 21, Def. Mot. at 3–15. Because none of those arguments succeed, ElKasstawi's motion is denied.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In early 2018, Mohamed ElKasstawi started a cryptocurrency investment fund called zk Capital, which aimed to manage outside investors' money to create profits for the fund's equity partners. Compl. ¶¶ 12, 18. He then offered Mohammed ElSeidy, who had expertise in analyzing the computer science technicalities of the cryptocurrency market, equity and partnership in zk Capital if ElSeidy agreed to provide research and analysis to the fund. *Id.* ¶¶ 10, 19. ElSeidy accepted the offer, so the two joined forces. *Id.* ¶ 21.

In May 2018, deviating from the fund's original goal of managing outside investors' money, ElKasstawi allegedly asked ElSeidy to loan him $209,800 of Ethereum (a form of cryptocurrency) so that ElKasstawi could directly invest in a cryptocurrency venture called Rightmesh. *Id.* ¶ 43. Though ElSeidy initially hesitated to make this loan, ElKasstawi promised that he would repay ElSeidy the entire

---

[2]The Court has diversity jurisdiction over this case, 28 U.S.C. § 1332(a), because ElKasstawi is domiciled in the State of Washington and ElSeidy is domiciled in Canada. R. 20, 9/21/2023 Minute Entry.

2

sum within two months. *Id.* ¶¶ 46, 48. So ElSeidy agreed and transferred the money. *Id.* ¶ 50.

Two months after the transfer, ElKasstawi still had not repaid ElSeidy, so ElSeidy followed up and asked when ElKasstawi would repay the loan. *Id.* ¶ 52. ElKasstawi gave an excuse for why the payment was delayed and said that he would repay ElSeidy soon. *Id.* ¶ 55. This back and forth continued through the summer of 2018. *Id.* ElSeidy then became more concerned when he learned that the value of Rightmesh's product had plummeted. *Id.* ¶ 53. This prompted him to ask ElKasstawi about the status of their investments in Rightmesh and other ventures, but ElKasstawi allegedly started dodging his questions. *Id.* ¶ 56.

In October 2018, after another one of the partners in zk Capital asked ElKasstawi about ElSeidy's loan, ElKasstawi wrote ElSeidy a personal check for the full amount of the loan. *Id.* ¶ 61. But ElKasstawi said that ElSeidy could not deposit the check because ElKasstawi's bank account did not have enough money in it; instead, ElKasstawi said that the check was a sign of good faith and was meant to document ElSeidy's loan and the outstanding obligation to repay him. *Id.* ¶¶ 60–63. ElKasstawi said that he would finally repay ElSeidy by no later than the end of the first quarter of 2019. *Id.* ¶ 63.

Soon after this, ElKasstawi met with all of the partners of zk Capital and told them that he could not give them the equity that he had promised in the fund and that instead he was going to wind down the fund's operations. *Id.* ¶¶ 81, 84. But ElKasstawi continued promising ElSeidy that he would repay his loan. *Id.* ¶ 87. In

3

August 2019, ElKasstawi asked ElSeidy to meet him in Egypt so that ElKasstawi could repay him. *Id.* ¶¶ 88–89. ElSeidy travelled to Egypt, but ElKasstawi never showed and never repaid him. *Id.* Finally, in a table-turning move, ElKasstawi sued ElSeidy in Cook County court, alleging that ElSeidy and others stole zk Capital's trade secrets and used them to help a competitor. *Id.* ¶ 90. Eventually, the state court ruled against ElKasstawi, concluding that he provided no evidence that the trade secrets in question ever existed. *Id.*

ElSeidy then filed this federal Complaint against ElKasstawi, claiming breach of contract, breach of fiduciary duty, promissory fraud, fraudulent misrepresentation, and unjust enrichment. *Id.* at 14–22. ElKasstawi now moves to dismiss the Complaint, arguing that dismissal is proper for failure to adequately state a claim, Fed. R. Civ. P. 12(b)(6), failure to satisfy the heightened-pleading standard for fraud, Fed. R. Civ. P. 10(b), and failure to provide fair notice of the claims, Fed. R. Civ. P. 8(a)(2). Def. Mot. at 3–15. ElKasstawi also asserted in his motion that the Court should abstain from exercising jurisdiction over this case under the *Colorado River* doctrine because there was (at the time) a parallel action between the parties pending in state court. *Id.* at 3–8. But that state court action has since settled, and the settlement does not resolve the federal claims at issue here. R. 37, 11/14/2024 Minute Entry. So ElKasstawi has voluntarily withdrawn his abstention argument. *Id.*

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Rule 8(a)(2) and Rule 10(b)

ElKasstawi first argues that the Complaint is vague and unintelligible. This argument borders on being frivolous. As noted earlier, Civil Rule 8(a)(2) instructs

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 10(b) states that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "The primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Standard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "[D]ismissal is an appropriate remedy" if "the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct." *Id.* at 798.

The Complaint here is nowhere near the threshold for dismissal. It coherently describes the claims that ElSeidy is bringing against ElKasstawi and properly lays out the grounds supporting those claims. Indeed, as detailed next, the allegations adequately set forth claims on which relief can be granted. So the Complaint provides more than fair notice to ElKasstawi. Dismissal on Rule 8(a)(2) and Rule 10(b) grounds is not warranted.

### B. Rule 12(b)(6)

Next, ElKasstawi argues that ElSeidy's Complaint fails to state any plausible claim and should be dismissed under Rule 12(b)(6). That fails too; ElSeidy's claims are all properly stated and supported by concrete factual allegations. First, ElKasstawi contends that ElSeidy's breach-of-contract claims fail because ElSeidy's money transfer was an investment, not a loan, so ElKasstawi had no contractual obligation to repay him. Def. Mot. at 10. This argument essentially asks the Court to accept

6

ElKasstawi's, rather than ElSeidy's, version of the facts as true. That gets the motion to dismiss standard exactly backwards.

Taking ElSeidy's factual allegations as true, as the Court must at this stage, ElKasstawi "requested that ElSeidy *loan* him cryptocurrency in the form of Ethereum valued at $209,800." Compl. ¶ 45 (emphasis added). And ElKasstawi "promised that he would repay the entire … [t]ransfer within two months after … receipt of the funds." *Id.* ¶ 47. ElSeidy agreed to give ElKasstawi the money "in exchange for [ElKasstawi's] promise to repay the entire amount within no later than two months following the *loan*." *Id.* ¶ 48 (emphasis added). And despite repeated promises to repay ElSeidy, ElKasstawi never did so. *Id.* at 13. So the Complaint clearly alleges that ElKasstawi asked ElSeidy to loan him money in exchange for consideration, ElKasstawi promised to repay that loan, ElSeidy agreed and gave him the loan, and ElKasstawi never paid him back. Those allegations constitute a properly pleaded breach-of-contract claim. ElKasstawi counters that the document containing the details of the money transfer was entitled "ElSeidy investments." Def. Mot. at 10. But the document's title does not override the fact that the Complaint repeatedly refers to the money transfer as a loan and alleges that ElKasstawi promised to repay the entire sum within two months. The contract claims survive the motion to dismiss.

Second, ElKasstawi asserts that ElSeidy's fiduciary-duty claim fails because there was no fiduciary relationship between them. Def. Mot. at 14. Assuming the truth of the Complaint's allegations, that is not right. "Fiduciary duties exist as a matter of law in certain relationships including partnerships and joint ventures."

7

*Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006). ElKasstawi "offered ElSeidy equity and partnership interest in zk Capital if he joined the fund and provided research and analysis." Compl. ¶ 19. And "ElSeidy accepted ElKasstawi's offer." *Id.* ¶ 21. So they allegedly were partners and had a fiduciary relationship. At the pleading stage, this is enough.

Plus, a "fiduciary relationship … may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 96 (Ill. App. 2002). That test is also met here, at least as the pleading stage. ElSeidy placed trust in ElKasstawi to handle and execute the operations and investments of zk Capital and entrusted ElKasstawi with more than $200,000 of his own money. Compl. ¶¶ 29–31, 50. So ElKasstawi had power and control over ElSeidy's money and over the fund, further establishing a fiduciary relationship between them. The breach-of-fiduciary-duty claim survives the motion to dismiss as well.

Lastly, ElKasstawi argues that the fraud claims fail because the Complaint does not allege that ElKasstawi made a false statement of material fact or that ElSeidy reasonably relied on that false statement. Def. Mot. at 12–13. That is incorrect on both counts. To state a fraud claim, the Complaint must allege that ElKasstawi "(i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev., LLC v. Nat'l*

8

*City Bank*, 592 F.3d 759, 766 (7th Cir. 2010). As alleged, ElSeidy's fraud claims meet all of these elements. He alleges that ElKasstawi induced ElSeidy to loan him money by falsely telling him that he intended to use the loan money to invest in a cryptocurrency venture and that he would repay ElSeidy in full within two months. Compl. ¶ 116–20. ElSeidy reasonably relied on those assurances and acted on them by transferring more than $200,000 to ElKasstawi. *Id.* ¶ 48, 50. And again, ElSeidy was injured because ElKasstawi never repaid him. *Id.* ¶ 123.

ElKasstawi argues that telling ElSeidy that he would repay him for the loan was merely a broken promise, not a false representation of fact. But the Complaint specifically states that ElKasstawi *never* intended to repay ElSeidy and instead intended to keep ElSeidy's Ethereum for his own personal use from the start. *Id.* ¶ 118. So ElKasstawi made false statements about his own intentions and knew that those statements were false when he made them. That satisfies the pleading standard for fraud claims. ElSeidy's fraud claims, like his others, may proceed.

## IV. Conclusion

ElKasstawi's motion to dismiss, R. 21, is denied. It is time to get discovery going in the case. On or before December 9, 2024, the parties shall confer and file a joint status report with a proposed discovery schedule.

ENTERED:

　　　　s/Edmond E. Chang　　　
Honorable Edmond E. Chang
United States District Judge

DATE: November 25, 2024